Good morning, Your Honors. My name is Julie Wang Gutierrez, Deputy Attorney General, representing the appellant in this matter, the Director of the California Department of Health Services. This question poses, this case poses the question, when does a law become a right? The answer is when the legislature uses precise language focusing on the individual in whom the right is created. Here, 42 United States Code Section 1396A, subsection A30A, does not contain the requisite language. That law regards methods, it regards a state plan that must ensure to the Secretary of Health and Human Services that proper methods and procedures are in place to implement a program to guard against unnecessary utilization of services and to against quality of care and to ensure access. I'd like to address three issues today, Your Honors. Private right of action. Why Section 30A does not contain the requisite language. Supreme Court precedent, congressional intent, and the text and structure of the statute all lead to the conclusion that the language in Section 30A does not create a private enforceable right. Second, I would like to discuss why the Department of Health Services is not required to consider costs and why intervening events distinguish the orthopedic case from applying here. Lastly, I'd like to address the lack of evidence below to support irreparable harm in terms of quality and access to services. First, with respect to the private right of action, Gonzaga has clearly set forth, the Supreme Court has dictated, that we must examine the text and structure of the Act. And in so examining the text and structure of Section 30A, we must, we must consider the direction that the Supreme Court gave, that it is not rights, that it is rights, excuse me, not benefits or merely interests. Quote, the Supreme Court stated, we now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under Section 1983. Section 1983 provides a remedy only for the deprivation of rights, privileges, or immunities secured by the Constitution and laws of the United States. Accordingly, it is rights, not the broader or vaguer benefits or interests that may be enforced under the authority of that section. Counselor, let's get to Judge Levy's opinion. Where did Judge Levy go wrong, in your view? Yes, certainly, Your Honor. Judge Levy relied heavily upon 1320A-2 and 1320A-10. He, he analyzed those sections as essentially being, essentially guiding the court, him, to conclude that the fact that the language appears in the State plan should not strike that. Let me go ahead and quote his language from his decision. He speaks of 1320A-2 as indicating the provision's inclusion as a requirement of a State plan that Congress in 1320A-2 and 1320A-10 directed the courts to ignore when determining whether a provision creates an enforceable right under Section 1983. What part of the opinion are you reading from? What page? I apologize, Your Honor. I will have that for you in just one moment. Okay. What Judge Levy did was he over, gave an over-broad interpretation and meaning to 1320A-2. The only thing that A-2 and A-10 does with respect to whether a right, interpreting whether a right exists, is it, it states that a State plan on its own, the fact that the language is included in a State plan, is insufficient for concluding no right exists. However, it doesn't mean, which Judge Levy interpreted it to mean, that its inclusion in a State plan means a right exists. That goes beyond what Congress intended because the explicit language of A-2 and A-10 states this provision is not intended to expand or to limit the interpretation of whether private rights of action exist. Thus, we must, we must default to the analysis of whether the three-prong analysis set forth in Wilder and Blessing and further clarified in Gonzaga. Your Honor, for the Court's clarification, where I was quoting in the opinion is found at 1122 and 1123. Okay. Thank you. Furthermore, another point where Judge Levy went wrong, if you will, is relying on certain legislative history. Again, at those same pages, which I just referenced, Judge Levy speaks to two aspects of legislative history. Now, the first deals with the Boren Amendment, the fact that Congress repealed the Boren Amendment. And as you may recall, the Boren Amendment relates to reimbursement for providers' costs. That is the explicit language. It includes reference to reasonable rates to reimburse providers. It includes specific reference to providers' costs. Congress repealed that section. In Wilder, hospitals and nursing facilities were deemed to have a private right of action under the Boren Amendment. That was in, strike that, Congress repealed the Boren Amendment and in so doing declared the provision of 1396A will be interpreted as establishing a cause of action for hospitals and nursing facilities relative to the adequacy of rates. Congress expressed a frustration with courts implementing cost-based standards in rate settings. Now that, appellant takes no dispute with because the appellant believes that that congressional intent indicates that this lawsuit should not go forward. However, what Judge Levy goes on to cite to in terms of legislative history is incorrect. He continues to speak of legislative history set forth in the House of Representatives Report No. 97-158 at page 301. And that legislative history provides, in instances where the states or secretary fail to observe the statutory requirements, courts would be expected to take appropriate remedial action. Now that legislative history does not relate to Section 30A. It is inappropriately relied upon for purposes of interpreting 30A. What that section relates to is the freedom of choice provision regarding the competitive arrangement for payment for laboratory services, medical devices and drugs. And, in fact, there was legislative history in that section to, relating to removing administrative burdens and increasing flexibility for the states in setting rates. Thus, what Judge Levy, I'm looking at page 1322, actually 1322-23, and Judge Levy seems to be saying that 1320A2 and A10 directed the courts, Congress, Congress is saying, says Judge Levy, that in those two sections, Congress directed the courts to ignore when determining whether the provision creates an enforceable right under 1983. But that doesn't mean, Your Honors, to ignore the text and structure of Section 30A. What it does mean is that the fact that it occurs in a state plan, we cannot simply conclude that that doesn't create a private right of action. The courts must go through the analysis. So here, in going through the analysis, the text and structure lacks that precise individual focus. As the Supreme Court stated in Gonzaga, there must be an unmistakable focus on the individual. We don't have that here. The language never once references Medicaid recipients. What about the last sentence of that paragraph at the top of 1123? Finally, unlike the statute in Gonzaga, Judge Levy says, a Medi-Cal beneficiary can resort to no administrative procedure to seek quality care or equal access. I will say that in Gonzaga, the analysis of the court about the administrative remedy available was cited by the court as buttressing their conclusion, but it was not the end-all-be-all. Here in the Medi-Cal world, there is a fair hearing right found in 1396A.3. Now, granted that fair hearing is limited to a denial of the Medi-Cal application and relating to reasonable promptness. Is it your view, then, that Judge Levy overlooked that remedy? No. The appellant is not arguing that Judge Levy overlooked that remedy, but that he placed too much weight upon the availability of a separate administrative remedy. Okay. With respect to the two Supreme Court cases that did find a private right of action, those cases are distinguishable. In Wright v. Roanoke Redevelopment Agency, the text and structure of the statute in question there had that individual focus. The language, the law dealt with a rent control ordinance, which created a ceiling on how much low-income families should have to pay for rent. The language in that statute was no family shall pay, focusing on the family, focusing on the individuals who have the right. And again, here, we don't have such language. The second case where the court found, the United States Supreme Court found a private right of action was in the Wilder v. Virginia Hospital Association. And again, looking at the individual language in the statute, that particular case, Wilder, interpreted the Borne Amendment. And the Borne Amendment, unlike Section 30A, contains specific language focusing on the provider's right to have their costs considered. Specifically, the former Borne Amendment provided that a state plan must provide for payments through the use of rates that take into account provider's costs, specific mention of providers, specific mention of costs, and that are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities. Moreover, in interpreting Section 30A and applying it, Congress created a mechanism by which to view and discover provider's costs by requiring the submission of cost reports to the state. The filing of cost reports indicates that Congress was specifically intending that provider's costs be intended. However, very significantly, Your Honors, Congress has repealed the Borne Amendment. The second prong of the analysis in Blessing relates to whether the statute is too vague and amorphous. And the discussion of Wilder and the Borne Amendment and the implementing and the requirement of submission of cost reports goes to the vague and amorphous argument, efficiency, economy, and quality of care. How has Congress interpreted that? The implementing regulations for the EEQ provision simply manifest cost containment concerns. The regulations relate to a federal upper limit, which goes back to the language of the statute, which deals with unnecessary utilization, protecting against unnecessary utilization, balancing the interests of a deficient and economic provider against quality. Thus, the EEQ provision for efficiency, economy, and quality of care is too vague and amorphous for courts to enforce. There are no implementing regulations that define what an efficient provider is. There are no implementing regulations indicating what amount of provider's cost should be reimbursed. Finally, Your Honors, I would like to point out the fact that the Section 30A was enacted pursuant to Congress's spending power. That indicates an intent not to find a private right of action. As the Supreme Court noted in Pennhurst, when Congress, when Congress enacts a law pursuant to their spending power, the proper remedy for state noncompliance is not an action such as this. The proper remedy is for the federal government to terminate funds. Here, that is the proper remedy. The system is set up so that the state plan is submitted to the Secretary of Health and Human Services for review to assure that those methods and procedures are in place. And once that is approved, or it can be disapproved, that is the proper by which to ensure state compliance, not private rights of action. Counsel, I'm informed that there's a 28-J letter, which I have not yet seen, that apparently arrived yesterday that recites that your office has just discovered that a portion of the Welfare Institution Code 14105-19 was repealed in August. What effect does that have in this case? It only has a very limited effect relating to pharmacy reimbursement, because this Rates? Yes. Reimbursement rates. This particular lawsuit challenges a law that reduces reimbursement rates by 5 percent. Now, the newly enacted law actually makes pharmacists, pharmacists reimbursement exempt from that 5 percent reduction. So the issues before the court still stand. However, rate reimbursement for pharmacists is now moot. I would like to reserve the remaining time for rebuttal, if I may, Your Honor. You may do so. Thank you. We'll hear from the appellees. Thank you, Your Honors. I'm Craig Canizo of the firm Hooper Lundy, and I'm here representing the California Medical Association and the other plaintiffs in the case consolidated for hearing with the Clayworth case. Mr. Carmen, counsel for Clayworth, and I have agreed to a two-thirds, one-third division of our time. I'll take the first two-thirds. May it please the Court, having heard a good deal of discussion regarding the private cause of action analysis from the Sanchez plaintiffs, I want to respond to some of the specific questions that Your Honor had regarding follow-up decisions by the district courts construing 30A, because there is some additional authority that was not cited by either party in the Sanchez. Turning specifically to the Sanchez plaintiffs, I want to be sure that we know the whole universe out there before we take the case, understand? Well, you certainly will have the benefit of that entire universe. In our brief, we discussed some of the subsequent district court decisions that were not mentioned, and they are Attrican v. Buell, Association of Residential Resources of Minnesota v. Minnesota, and in the citation quoted from the Attrican decision, there's another decision that is referenced, Burlington United Methodist. Page are you on in your brief? Excuse me. I'm on page 29 and 30, and the quote is on page 30 from the Attrican reconsideration motion, very similar situation to Sanchez, where the court was asked to reconsider an earlier ruling on post-Gonzaga, and concluded that once the section is broken down under the Blessing and Gonzaga analysis, all courts that have addressed this issue find the quality of care and adequate availability provisions are intended to benefit Medicaid beneficiaries while the efficiency and economy provisions are directed toward the state. Well, now, Attrican was at least available to Judge Levy when he decided this case, was it not? I mean, that's not a post... that was a 2001 case, isn't that right? Yes, but the 2001, I believe that this decision on reconsideration is a subsequent order that is subsequent to the 2001 published decision, and we actually have a... A site to that reconsideration? We have our record site, it's in the appendix at 569-570, it's the actual slip opinion or order I believe in our appendix, it's cited... We'll find it, that's fine, thank you. And they do cite this additional decision of Burlington United Methodist versus service or serve, that's a Lexis site and it looks like it's cited as dicta. I would also take issue with the characterization of SDV Hood and the Fifth Circuit's views on a 30 that was mentioned by, I'm not sure if it was the Sanchez Council for the state or the Appellant's Council in this case, but SDV Hood cites with approval the prior ruling of Evergreen Presbyterian Ministries, V Hood, which was specifically focused on A30, it was the entire case, holding specifically that beneficiaries have a entitlement to enforce the equal access and efficiency, quality, efficiency, economy and quality provisions of 30A. So that's that universe of decisions that we're aware of, we believe that the Sanchez District Court decision is the aberration that falls outside this string. I think it is defective in its reliance on the fact that the structure of the Medicaid Act and the state plan requirements somehow means that the provisions individualized in section 1396 as part of the plan are therefore not enforceable by individual plaintiffs. I think that discussion and that analysis is difficult if not impossible to square with the fact that in 1989 when the language in 30A was codified, they specifically codified a regulation that already existed. And so in answer to your Honor's question, what's kind of the overall scheme that's going on here, why is private enforcement deemed necessary, well Congress had in 1989 a scheme in which the very specific criteria that we're attempting to enforce was already in the Secretary's regulations and that's cited in our brief, it's 405.204 of the CFR. Congress however had determined that that regulatory oversight clearly had been insufficient in assuring that Secretary's, excuse me, states did not balance their Medicaid budgets by merely ratcheting down across the board provider reimbursement rates with the resulting effect that access at that point in time was being limited in a way that Congress felt was inconsistent with its intent. Had there not been an intent to create enforceable rights in beneficiaries to enforce the equal access requirement, they would not have needed to enact the 1989 amendments which were designed expressly to give them that right. And Congress could have been a little more precise in establishing such rights, could it not? Your Honor, I think that the Congress recognizing that it was acting prior to the Supreme Court's clarification of these enforceable right analysis structures or analysis principles did a fairly decent job in articulating precisely what they intended the standard to be met, it couldn't  I think there's a very specific discussion of how the access criteria is to be measured and it's specifically referenced to the insured population, it's specifically referenced to the number of physicians per capita in the geographic area. I'm not talking about coverage, I'm talking about language which would have said there is hereby created a private right of action in recipients to enforce the provisions of the rest of the statute. They could have said that. Certainly had Congress done that at the beginning of the Medicaid Act or at any point some of the subsequent litigation would not have perhaps been as necessary as it's turned out to be or the ambiguities as obvious as they are. However, we don't believe that the legislative understanding of the enforceability of the Medicaid provisions or the Social Security Act in general has been that unclear. We think if you look at the string and the comments that have occurred over the past 35, 40 years, it is very clear that Congress understood the act to be enforceable. Again, one wonders why the 1994 amendments would have been necessary to 1320A and A2 and A10 had there not been a clear understanding on Congress's part that this act has been enforceable through private remedies, recognizing that in 1990 the Supreme Court itself had held in Wilder that the act was enforceable itself on behalf of providers. So I think Congress's understanding had to be based on the decisions as they existed in the Supreme Court at that time. And we recognize that the Supreme Court has occasion to revisit these issues and clarify points, but I think with respect to the Medicaid Act there's a pretty consistent understanding of the enforceability of the act. Well, now put that in the context of the Gonzaga case decided in June of 2002. One reasonable interpretation of that is the Supreme Court saying, hey, whoa, let's slow down here. We are not going to willy-nilly read in private rights of action. I believe that in the context of Gonzaga that was unarguably necessary. However, on that occasion that the Supreme Court cited Wilder as still viable law, it had occasion to reverse Wilder if it had come to a different conclusion, and it chose not to. It actually cited it with approval as a contrary situation in which enforceable rights had been found properly. So I think it's very difficult in the context of the Medicaid Act to view Gonzaga as casting some doubt on all these prior decisions. The reality is that post-Gonzaga there have been decisions in the 1st, 2nd, 3rd, 5th, 6th, 7th, 8th, and 9th Circuit, well, excuse me, not the 9th Circuit yet, enforcing provisions of the Medicaid Act under the very section that we are debating this morning, 1396, various subdivisions of that act. And, yes, it is necessary to review each one of them individually to make sure that they have a non-aggregate focus. But I think as S.D.V. Hood in the 5th Circuit decision most recently concluded, it is very difficult to see how anything other than an individualized focus on the Medicaid beneficiary's entitlement to a particular service, and in our case a particular access to that service, because it's certainly not very viable to require the state to provide certain types of services if no provider will provide them. Judge Wilkin in the other case specifically found that this language described an aggregate program rather than create individual rights. What's your response to her approach? I don't believe that's the correct conclusion because I believe that much as the court in Excuse me a second. I like the language that the court used in that discussion. We noted it in our letter to the court just last week when we became aware of this decision a short 10 days after it was issued. Viewing a section of the act that we believe is So this is S.D.? S.D.V. Hood. What page are you on?  I believe it's 17. It's probably a slip opinion site if I had to guess. In our Westlaw printout it's Lexis site probably. Okay. For a Lexis site, it shows up on our page 15 of the Westlaw printout. Okay. The Medicaid Act confers the right of health care treatment services and other measures described in D.A. when necessary for ameliorative purposes. Rather than merely having an aggregate focus, the EPSDT provisions are concerned with whether the needs of a particular individual have been satisfied. In our case, we believe that applying that same approach to A30, the provision in question cannot be construed as an aggregate focus but rather is focused on whether the needs of the eligible individuals have been satisfied in meeting the equal access criteria that Congress went to some considerable length to both codify and specify. I guess I would have to just say squarely that I couldn't disagree more with the notion that there's an aggregate focus in A30. The last point that we have before us then is whether all these courts that have found under Gonzaga the Medicaid Act to be enforceable have concluded incorrectly that the provisions of the Medicaid Act are not intended to confer individual rights. We could not disagree more clearly that we think those courts, every circuit court which has addressed the issue has. Well, what's your view of what Gonzaga was trying to do? Where does Gonzaga fit? I mean, we've been discussing it now for quite a while in terms of other cases, but what's your personal or your client's view? Our client's view is that the individual act in question must be, first of all, it's a matter of congressional intent. I mean, that is the underlying purpose of Gonzaga and all prior pronouncements. It's not to make up the law but rather to discern whether Congress truly intended that the act be enforceable by private citizens or intended beneficiaries.  Unambiguous language or whatever the passage is? Unambiguous language. And we believe that A30 and similar provisions in the Medicaid Act under 1396 in an individual instance can meet that standard. Specifically, with reference to S.D.V. Hood, we would note that the provision that they construed as enforceable was the very next section after the section in question in our case in the 89 amendments. And we see a very clear, consistent intent in the 89 amendments to provide protection and safeguards and, indeed, expanded rights for Medicaid beneficiaries. Your side has about six minutes left. Yes. All right. Mr. Carman. Good morning, Your Honors. My name is Len Carman, and I represent two Medi-Cal beneficiaries. The only beneficiaries in the case and one pharmacy provider. And I want to emphasize that our case is composed of two or three simple elements. We have two beneficiaries which we said were Medicaid beneficiaries. They admitted in their answer that they were. Then we alleged that what I call Section 30A was enacted, and Section 30A requires that the state consider the efficiency, economy, quality, and access requirements when they set a rate. Not quite so close to the microphone. Oh, okay. Thank you. And so I conclude that sets up a mandatory ministerial duty on the part of the state to set rates which are consistent, to consider the factors of efficiency, economy, quality, and access, which I call the equal factors. And in our brief, in Judge Levy's opinion, he makes it very clear that the state did not consider any of these factors in enacting Section 14105.49, the 5% rate cut. And at this point, I say we are therefore entitled to an injunction. And we ask for a mandatory, a permanent injunction, or a writ of mandamus, or at least a preliminary injunction on this undisputed evidence alone. And, of course, the attorney general is over there. He's sort of an umpire. He says, not so fast, Mr. Cartman. You haven't shown any irreparable injury. And he says you haven't even pleaded it. Well, first of all, that's a egregious misstatement of the record. We pleaded irreparable injury twice at pages 11, page 23 of the supplemental excerpts of record. And orthopedic, the orthopedic case, in our view, is dispositive of this issue. What were the facts in orthopedics? The facts were that the state, just as they did here, failed to consider any of the quality factor set in the rates. And the court therefore said, well, since you haven't considered the quality, the rate is void. And in the last page, it states that upon remand, the department shall undertake responsible cost studies that will provide reliable data as to hospitals' costs, and to the end, that it determine the cost to an efficient hospital economically providing quality care. The state must then set rates that have some reasonable relations to such costs. That's an injunction. You can't get an injunction without irreparable injury. Orthopedic necessarily held that the proof of the failure to consider quality or access is, if so facto, what I call a constituent and inherent injury of an irreparable nature. And it's actually a right and the violation of a right, which is ineffable and very valuable, and it cannot be measured by monetary damages. And the performance of that duty is the very essence of executing Congress's intent to have rates high enough so that the quality and the access factors can be can be achieved. So then also recently we had the long term alliance case to 60 federal supplement 282 at 289, which actually held that upon the failure to consider the equal factors that irreparable injury is automatically presumed. Now, that case was overruled on an entirely different point on appeal, but that that case certainly is in line with with my view. And then the attorney general over here again is the umpire for the taxpayers. And he says, not so fast, Mr. Carmen. He says, you know, there was a study that showed that actually the rates are high enough to meet all of the equal factors. Well, the trouble of that study, your honor, was that it was done after the case was over. The case was decided on December 23rd. And so until January 8th, they decided, oh, we'll do a study to show that it does make the standard. But so it was too late and it was probably not considered by Judge Levy. But more importantly, orthopedic hospitals is is conclusive and controlling on the point that such even if the cost, even if the rates are sufficient to meet the quality and access requirements, they're irrelevant. In orthopedic hospitals, you had a situation where not only did the state not consider equality in setting the rates, but each side proposed a study which showed the plaintiff said the rates weren't high enough. The state had a study which said, oh, the rates are more than sufficient. Just exactly as they're saying here. And in the orthopedic panel said, it's irrelevant. We won't consider it. Thank you. Thank you, counsel. I'd like to comment a little bit about your question about. Very quickly, because your time has expired. All right. One, what is unambiguous to somebody in the street is not what is unambiguous to members of the bar and to the judiciary. What the Supreme Court has looked for the test there is under Gonzaga is, is there a benefit? Did Congress intend to benefit? And what were the enforcement apparatuses? And where all the eastern circuits went wrong, in my view, is that they concluded that the E.E. efficiency factors were not designed to benefit beneficiaries. But orthopedic says that the rates must be high enough on this integrated basis to afford enough funds to efficient and economical pharmacies to provide quality services. So in the Ninth Circuit, they held that this is a benefit. In the east, in the other, east of the Rockies, they said, oh, it's not a benefit. So they never got any further than that. And I say you have to go further than that because the Ninth Circuit says it is a benefit. All right. Thank you. Thank you. Thank you very much, Mr. Carman. Your time has expired. Ms. Gutierrez, you have some reserved time, about four minutes. Yes. Thank you, Your Honors. I would like to point out first, I'd like to elaborate. The Court posed the question, what mistakes did Judge Levy rely upon in his opinion? And I'd like to elaborate that there are two other that I failed to mention earlier, the first being that Judge Levy relied upon two cases that are pre-Gonzaga cases, and those were Pennsylvania and the Evergreen Presbyterian Church. Now, those cases merely found that Medicaid recipients are, they do receive a benefit under the statute, but that is insufficient under Gonzaga for creating a private right of action. Indeed, providers reap some level of benefit from Section 38. Taxpayers themselves also reap a benefit, but that is by itself insufficient. And if this Court were to deem that that would be enough to create a private right of action, then we would be opening the doors to floods of litigation by those particular classes of individuals. Kelsey, you heard Mr. Canizo rely pretty heavily on SD versus Hood. I'd like to hear your response. Your Honor, we'd be happy to brief that if the Court, do you have a specific question with respect to that particular Court's holding? No, I just want to know what your response is to what he just said. That's fine. Why don't you go ahead with the rest of your presentation. The second ground that the Court relied upon that I failed to mention earlier was that Section 30A, Judge Levy found that Section 30A was not subject to the substantial compliance provisions in the Medicaid Act, and that is incorrect. Section 1396A of the Medicaid Act subjects States to substantial compliance and allows the Secretary of Health and Human Services to enforce States' failure to comply with those Medicaid provisions and with the assurances provided in the State plans. Next, Your Honors, I'd like to address your question about where does Gonzaga fall in the large scheme of things. And the impact of Gonzaga is essentially that the Supreme Court has now instructed to limit lawsuits brought to enforce spending clause statutes. The appellee repeatedly referred to the Medicaid Act as a whole, but the Supreme Court noted for us to be examining the text and structure of the specific law issue, and here that is Section 30A. Finally, I would like to address the Sabree case and point out to the Court, again, the difference in the language, the text and structure of the statute in question in Sabree versus Section 30A. In Sabree, the Court was analyzing Section A8 and Section A10. Both of those provisions have a specific focus that a State plan for medical assistance must provide that all individuals wishing to make application for medical assistance shall have the opportunity to do so and that such assistance shall be furnished with reasonable promptness to all eligible individuals. Finally, A10 again has that same focus on all eligible individuals, which Section 30A does not. Finally, Your Honor, although belated, I do apologize. Section 30A was not addressed in the Hood case, and I would advise the Court to look carefully at the reasoning because it does interpret a different provision. In closing, Your Honors, the preliminary injunction should be denied because the Supreme Court has dictated, congressional intent has indicated, and the text and structure of Section 30A dictate that there is no private enforceable right by Medicaid recipients to enforce that section. Second, appellant was not required to consider provider's costs, and we have set forth that argument in our briefs, in setting rates because the foundation for the holding in orthopedic has been weakened by Congress's intent in the same year that orthopedic was rendered. It repealed the Borne Amendment and explicitly indicated that they wanted to stop and bar litigation of rates. And finally, there is no evidence of lack of quality of care or access. Thank you very much, counsel. The cases just argued will be submitted for decision, and the Court will adjourn. Go ahead, I'll catch up with you. Thank you.
judges: O'scannlain, Cowen, Bea